IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Robert McLeod, | ) | C/A No. 3:11-174-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Deron McCormick; Dean Benenhaly; Herbert Williams; and City of Sumter, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, Robert McLeod ("McLeod"), filed this action pursuant to 42 U.S.C. § 1981 and § 1983 against the named defendants alleging claims of race discrimination and retaliation for exercising his First Amendment rights.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion to dismiss and/or for summary judgment. (ECF No. 58.) McLeod filed a response in opposition. (ECF No. 67.) The defendants filed a reply (ECF No. 68), as well as a supplement to their motion providing intervening relevant case law (ECF No. 74). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to McLeod, to the extent they find support in the record. McLeod, an African American male, was employed by

---

[1] McLeod concedes he has not been able to produce any evidence of retaliation with regard to his claims of racial discrimination, so the court considers this claim abandoned. (See Pl.'s Mem. Opp'n Mot. Dismiss, ECF No. 1 at 3.)

Page 1 of 14



the City of Sumter's Sanitation Department as a heavy equipment operator from June of 1995 until he was terminated in April of 2009 for the stated reason of unsatisfactory job performance. During his employment with the City, McLeod had criticized or complained about alleged safety violations stemming from the City's policies as well as various employment issues, such as the failure to pay overtime compensation, lack of breaks, and general work conditions. Also during his tenure, McLeod received at least six reprimands or disciplinary notices for a variety of issues, including failing to follow instructions of his supervisors, insubordination, careless use of City property, failure to report for duty at the assigned time, and failure to complete his duties in a timely manner. In this action, McLeod contends that his employment was terminated in violation of 42 U.S.C. § 1981 and § 1983[2] because he is black and in violation of 42 U.S.C. § 1983 and the First Amendment to the United States Constitution in retaliation for speaking out against the City.

## DISCUSSION

**A.     Service of Process**

As a threshold matter, Defendants McCormick, Williams, and Benenhaly[3] properly assert that McLeod's claims against them should be dismissed for lack of service of process under Rules 4(m) and 12(b)(5). Although McLeod argues that the defendants waived or accepted service by filing an Answer and defending against his claims, the individual defendants raised this defense in their Answer, see Federal Rule of Civil Procedure 12(h), and the docket shows that McLeod has never

---

[2] Although not discussed by the parties, the court observes that § 1983 is the exclusive remedy against state actors for violations of the rights guaranteed by § 1981. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989).

[3] The court observes that the record also contains references to this defendant as "Benenhaley." (See Benenhaley Aff., ECF No. 58-6.)



filed proof of service with regard to these defendants. Accordingly, the individual defendants are subject to dismissal from this case. Moreover, even if they had been properly and timely served, they are entitled to summary judgment for all of the reasons discussed below.

**B.      Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine

whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**C.     Burden Shifting Framework**

The burden shifting framework developed for Title VII may also be applied to § 1981 and § 1983 claims. See Lightner v. City of Wilmington, N.C., 545 F.3d 260, 263 n.* (4th Cir. 2008). A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that

the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

PJG

**D.     McLeod's Discrimination Claim**

The parties agree that to establish a *prima facie* case of disparate treatment based on race, a plaintiff must show: (1) he is a member of a protected class, (2) his job performance was satisfactory, (3) he suffered an adverse employment action, and (4) he was treated differently from similarly situated employees outside his protected class. See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (Title VII). The defendants challenge McLeod's ability to demonstrate the second and fourth prongs of this test. Because the defendants' proffered reason for terminating McLeod's employment is his work performance, the court addresses the issue of the second element of the *prima facie* case and the question of pretext together. See Warch, 435 F.3d at 516 (noting the flexibility of the McDonnell Douglas framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's unsatisfactory work performance] at different stages of the McDonnell Douglas framework").

It is well settled that in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. In

fact, the law recognizes that the employer need not even be correct regarding its assessment of the plaintiff's work performance, as long as the assessment is genuinely believed. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that " '[i]t is the perception of the decisionmaker which is relevant' ") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)); Tate v. Dravo Corp., 623 F. Supp. 1090, 1105 (W.D.N.C. 1985) ("The factfinder need not judge the correctness of the employer's assessment of the employee's abilities; it need only determine that the employer in good faith believed that the employee's performance was unsatisfactory and that the asserted reason for the decision was not a mere pretext for discrimination.").

Here, McLeod does not dispute that he was disciplined or reprimanded six times in seven years for performance-related problems. Although he may dispute the validity of his employer's criticisms, he has presented no evidence that the defendants' beliefs about his performance problems were not genuinely held but rather were a sham designed to hide his employers' purpose of discriminating against him based on his race. See Warch, 435 F.3d at 518. Even accepting his characterization of some of these reprimands as being related to his attitude and criticisms rather than his performance, he cannot show that the defendants' actions were based on his *race*. See Lightner, 545 F.3d at 263-64 (finding that a plaintiff's repeated admission during litigation that the real reason for his suspension was to cover up department wrongdoing wholly undermined plaintiff's claim of race or gender discrimination under Title VII). In fact, the facts presented create an inference of nondiscrimination by Conyers and Goodman, two of the supervisors who recommended that McLeod

PJG

be reprimanded and/or terminated, since they are of the same race as McLeod. See Demesme v. Montgomery Cnty. Gov't, 63 F. Supp. 2d 678, 683 (D. Md. 1999) (Title VII) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), aff'd per curiam, 208 F.3d 208 (4th Cir. 2000); see also Coggins v. Gov't of District of Columbia, 173 F.3d 424, 1999 WL 94655, at *4 (4th Cir.1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."). Similarly, since Defendant Williams recommended McLeod both for hire in 1995 and for termination in 2009, an inference exists that discrimination was not a determining factor in the challenged termination. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (stating that where the decision maker is "the same person who hired [the plaintiff], there is a 'powerful inference' that the failure to promote her was not motivated by discriminatory animus") (quoting Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991)). For all of these reasons, McLeod's claim of race discrimination fails as a matter of law.[4]

---

[4] Additionally, McLeod cannot establish the fourth prong of the *prima facie* test either. In support of this element, McLeod relies on an affidavit from a former co-worker, Robert Tention, attesting that Tention, who is black, was terminated when he "bump[ed] a car with [his] city vehicle" in contrast to the City's treatment of a white employee who was also in an accident but was not terminated. As an initial matter, nothing in the record suggests that Tention and the white employee were similarly situated as that term has been applied in the context of an employee asserting that he was disciplined more severely than someone outside his protected class. See Lightner, 545 F.3d at 264-65 (requiring a plaintiff to show that she engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin); Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002) (requiring a plaintiff to demonstrate that other employees outside the protected class were retained under similar circumstances); see also Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992) (defining "similarly situated" in the context of Title VII and ADEA comparators). Moreover, McLeod has presented no evidence demonstrating that *McLeod* was treated differently than white employees with similar infractions to McLeod's, such as tardiness, failure to timely complete duties, and disregarding supervisors' instructions. See Bryant, 288 F.3d at 133 (providing *prima facie* case for disciplinary discharge); Lightner, 545 F.3d at 264-65 (providing *prima facie* case for disparate disciplinary measures).

E.  McLeod's First Amendment Claim

To establish a claim for retaliation in violation of the First Amendment's free speech protections, a public employee plaintiff must show: (1) that he spoke as a citizen, not an employee, on a matter of public concern; (2) that his interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public; and (3) that there was a sufficient causal nexus between the protected speech and the retaliatory employment action. Smith v. Frye, 488 F.3d 263, 267 (4th Cir. 2007).

The first required element recognizes the United States Supreme Court's holding that to prevail on a First Amendment free speech claim, a public employee must show that he spoke as a citizen, rather than an employee, on a matter of public concern. Garcetti v. Ceballos, 547 U.S. 410 (2006). In Garcetti, the Court recognized the need to balance the interests of a citizen who is a public employee in commenting on matters of public concern with the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.[5] Id. at 417. Importantly, the Court focused on the key fact that the speech was made *pursuant to the employee's duties* as the calendar deputy district attorney; the attorney was doing what he was employed to do. Id. The attorney's speech, the Court observed, *owed its existence* to his professional responsibilities as a public employee. Id. The Court expressly held that when public

---

[5] In that case a public employee—a deputy district attorney—alleged that he had been subjected to retaliatory employment actions based on his testimony and written memoranda regarding a search warrant that he believed had been obtained with false information. In concluding that the attorney's speech was not protected because he did not speak as a citizen on a matter of public concern, the Garcetti Court examined various factors. It found that the location where the speech occurred was not a determinative factor. Id. at 420-21. Nor was the fact that the memorandum concerned the subject matter of the attorney's employment. Id. at 421.

PJG

employees make statements "pursuant to their official duties," they are not speaking as citizens for First Amendment purposes. Id.

As the Garcetti Court noted, a public employee's speech made pursuant to official duty does not enjoy First Amendment protection, but "[t]he dictates of sound judgment are reinforced by the powerful network of legislative enactments—such as whistle-blower protection laws and labor codes—available to those who seek to expose wrongdoing." Garcetti, 547 U.S. at 425. "These imperatives, as well as obligations arising from any other applicable constitutional provisions and mandates of the criminal and civil laws, protect employees and provide checks on supervisors who would order unlawful or otherwise inappropriate actions." Id. at 425-26.

The purported speech in this case involves McLeod's criticisms and complaints about alleged safety and labor violations. These criticisms and complaints owe their existence and were made pursuant to McLeod's position with the City's Sanitation Department. In fact, it is difficult to conceive how complaining about the manner of operating the sanitation truck is not part of McLeod's official duties as a truck driver for the City. See, e.g., Davis v. McKinney, 518 F.3d 304, 313 n.3 (5th Cir. 2008) (noting that "the case law is unanimous in holding that [an] employee's communications that relate to his own job function up the chain of command, at least within his own department or division, fall within his official duties and are not entitled to First Amendment protection"). As such, and as observed by the Garcetti Court, they do not fall within the *Constitution's* protection. See Brooks v. Arthur, 685 F.3d 367, 371 (4th Cir. 2012) ("At bottom [Connick v. Myers, 461 U.S. 138 (1983)] reflects the belief that many ordinary disputes in the public workplace should be settled or resolved without calling the heavy artillery of the Constitution into play.").

Page 10 of 14

PJG

Moreover, the United States Court of Appeals for the Fourth Circuit has held that "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992); Dennison v. Cnty. of Frederick, 921 F.2d 50, 54 (4th Cir. 1990) (finding that an employee's manner of enforcing the building code in a stricter fashion that urged by his supervisor was not protected speech); cf. Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488 (2011) (applying the framework used to govern Speech Clause claims by public employees to Petition Clause claims by public employees, such as those stemming from petitions filed with an employer using an internal grievance procedure). Further,

> [b]ecause almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.

DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995) (emphasis in original) (internal quotations and citation omitted). Accordingly, McLeod's § 1983 claim based on alleged retaliation for exercising First Amendment rights must fail.

Moreover, even if McLeod's speech were protected, the individual defendants are entitled to qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*PJG*

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lefemine v. Wideman, 672 F.3d 292, 297-98 (4th Cir. 2012). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 235, 242.

In determining whether the right violated was clearly established, the court defines the right " 'in light of the specific context of the case, not as a broad general proposition.' " Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation marks omitted). In analyzing this prong, a court in this district generally must look only to case law from the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court. Lefemine, 672 F.3d at 298-99 (citing Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999)).

As stated above, as an essential element of a claim of retaliation in violation of the First Amendment's free speech protections, a public employee must show that he spoke as a citizen, rather than an employee, on a matter of public concern. Garcetti v. Ceballos, 547 U.S. 410 (2006). Exceptions to this rule, if any, are undeveloped, see, e.g., id. at 425 (declining to address whether that analysis would necessarily apply in a case involving speech related to scholarship or teaching),

and the line between protected and unprotected speech is often blurry. See Decotiis v. Whittemore, 680 F. Supp. 2d 263, 272-74 (D. Me. 2010) (discussing the fact that Garcetti left to the lower courts the task of fleshing out the distinction between official-duty speech and private-citizen speech), vacated in part on other grounds, 635 F.3d 22 (1st Cir. 2011). Thus, even accepting McLeod's allegations as true, the court cannot unequivocally say that the defendants in their individual capacities knew or should have known in 2009 that retaliating against McLeod for the speech at issue here violated the First Amendment. See Stickley v. Sutherly, 667 F. Supp. 2d 664, 671 (W.D. Va. 2009) (discussing the "ill-defined line" between protected and unprotected speech and holding that "[q]ualified immunity shields a public official for not properly discerning that his decision is on the wrong side of that line"); see also Decotiis, 680 F. Supp. 2d at 272-74 (noting the lack of a clearly defined line between citizen speech and employee speech in determining that a defendant was entitled to qualified immunity).

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion be granted as to all of the plaintiff's claims. (ECF No. 58.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 7, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).